Good morning. May it please the court. My name is Eitan Kassel Janich. I'm representing Amy Kelly in this appeal. The case has been fully briefed by both sides and the court sent us a notice asking us to focus on the issue of harmless error. And in reviewing my brief I feel like I often do a better job describing the what rather than the why. So I'm going to try to focus on the why here. First regarding harmless error and trying to reconcile the Supreme Court's decision in Sanders with the United Circuit's decision in McLeod. I think that what's most interesting about these decisions certainly with in Sanders the Supreme Court, there's language that even in Sanders, there's language that sort of is contradictory. At the same time that the court says that there is a burden on the appellate to show that the harm, the error is harmful. Elsewhere in the decision they also point out that often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. If not, then the party seeking reversal normally must explain why the erroneous ruling caused harm. Now the Ninth Circuit in McLeod actually noted that language by pointing out that the, this is on a, let's see. Of course they're not on the page. They're very clear. The circumstances by also stating that the reviewing court can determine from the circumstances of the case. They cited to that language from the Supreme Court. So while it's true that a wise appellant is going to raise every issue and raise them real clear and shot them to the rafters and make sure everyone can clearly see what it is that the problem is, some problems are so big that just by identifying them it's apparent to any court why this is a reversible error. Okay. If I could interject a comment in asking for the parties to address harmless error. We didn't mean to, you know, pre-term it or stop people from arguing the merits, which are quite complex here. Okay. So you might turn to that. Thank you. I probably have a very simplistic misunderstanding of standards, but I'm just reading it now to indicate that we, the Supreme Court wants us to look at all the circumstances if there's a harmless error issue. But I guess first we have to know is there an error. How did the ALJ error here? Okay. Well, I'll jump back to error and then I'll jump back to McLeod because I think McLeod has some interesting language that applies to it. The biggest error here involves the ALJ's treatment of the medical evidence, the ALJ's failure to even mention a treating psychiatrist, Dr. Joris, the failure to discuss any of the clinical findings from Ms. Kelly's treating mental health therapist, doesn't mention any of them. In my brief I provide a long list of significant findings from her treating providers, none of which were mentioned by the ALJ. And because the ALJ didn't even mention this evidence, this Court is left in the blind. There is no way, we can't look at the ALJ's decision and determine how he weighed that evidence, how she weighed that evidence, because she didn't weigh it, she didn't discuss it. And her failure to discuss that significant probative evidence I believe is harmful error here. And the reason I believe it's harmful is this Court should look at that evidence and ask itself if no reasonable ALJ who discussed that evidence, who considered that evidence could have reached a different conclusion. And that is pretty much the harmful standard, harmless error standard that is stated in Stout. The other errors in this case, well, if you don't evaluate the medical evidence properly, if you don't discuss, for example, improper rejection of the treating psychiatric nurse's opinion, Amy Wagenblas. She was treating, she was providing her with psychiatric medication, she's the treating provider, and yet the ALJ rejected her opinion because she was, quote, not an acceptable medical source. That's not an acceptable reason to reject the opinion of a treating psychiatric nurse practitioner. And under Social Security ruling 0603P, that's not proper. Is that because she's a nurse practitioner or just because she is a treating medical person? Both. Because the fact, in this state, a nurse practitioner can prescribe psychiatric medications. In some other states, there would be a different person. If, for example, she was a treating physician assistant and was prescribing psychiatric medications, I think the same argument would apply. The fact that she was treating her for this actually does mean that her opinion matters. It's not something that can be just rejected because she's not an acceptable medical source. There's also, I raised the issue of the ALJ's failure to discuss the listings and the C criteria. I'm sorry to belabor this. No, go ahead. Do we have any authority on that? I'm sorry? Do we have any authority on when does someone become a treating medical person and when is someone simply a helper? Well, Social Security ruling 0603P is the best authority on that. It's since 2006. The Ninth Circuit has not gone to great, there's some cases that have discussed the issue but not in light, not based on that ruling. Taylor, excuse me. Most recently in Taylor, this court did discuss the importance of that type of evidence. So that is really the best Ninth Circuit precedent on the issue. The other issues here including, well, I want to jump to the additional evidence right to that. After Ms. Kelly's hearing, she has mental illness and wasn't getting as much treatment as she should have. And that's in the record and that's one of the symptoms of her mental illness. Also, the place she'd been getting treatment had a time limit on when she could go there and it ran out of her time and then wasn't real quick to get back. Well, she did go back, she got more treatment, and there are additional records that show that indeed her condition continued to have a major impact on her ability to function. These were submitted to the Appeals Council and under the recent decision in Taylor, this court should also look at that evidence in order to determine whether or not the evidence in its entirety, whether or not in light of that evidence, the ALJ's decision is supported by substantial evidence and free of legal error. I want to quickly jump back to McLeod now because what's most interesting about McLeod and most problematic about it, I guess is the more accurate way to describe it, is in the course of two paragraphs, McLeod states four different standards on harmless error. And first the court states, mere probability is not enough, so that sounds like you better have something more than probable. Then it says the circumstances have to show a substantial likelihood of prejudice. That's a pretty high standard there. Then it says if harmlessness is clear, okay, that's also a pretty high mark to achieve. The following paragraph, reasonably likely to have been prejudicial. Now, I can't reconcile this. I don't see how anyone can. I would look to Sanders and I would look to Stout. And I would also look, you can look at our sister circuits. One case that I found in the Seventh Circuit is SPIVA, though there's a whole line of cases from the Seventh Circuit where the language is quite a bit stronger. First I want to point back to the Supreme Court in Sanders. It talks about, well, I'm going to jump back to SPIVA. Okay, if it's predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record, though the agency's original opinion failed to marshal that support, then remanding is a waste of time. That's sort of similar to Stout. It's looking at could bringing in 100 reasonable judges, are all 100 of them going to sit there and look at this and go, this doesn't change anything. That evidence doesn't matter. That's harmless error. But unless this court can confidently conclude that a reasonable ALJ who properly considered the evidence couldn't come up, couldn't make a different decision, that is harmful error. And that's the type of error that should be remanded to the ALJ to be fixed. This court is, and any court in Social Security is not, you know, you're not, the district court is not finders of fact. It's the ALJ that is. And if the ALJ doesn't consider the evidence, how can any court tell what the ALJ is thinking and whether or not his failure to consider that particular evidence, how it would have impacted his decision. We don't know because he didn't discuss it. He didn't follow the requirement that he explain the rationale for his decision and explain what way he gave to the evidence. And if you don't have any questions right now, I would want to reserve some time. Okay. I hear no questions, so I'm going to save your time for rebuttal. Thank you. And we'll hear from Ms. Miller, please. Good morning, Your Honors. May it please the Court, I'm Catherine Miller on behalf of the Commissioner of Social Security. I know, Judge Gold, you stated that you believe Sanders was fairly straightforward, but I'd like to make a few points about the Sanders. Actually, I think I said I probably have an overly simplistic misunderstanding of it, but go ahead. All right. Well, in Sanders, the Supreme Court rejected mandatory presumptions of prejudice in favor of a very case-specific approach and said that the burden of showing prejudice normally falls on the person attacking the agency action. And this court in McLeod held that the principles enunciated in Sanders apply to Social Security cases. So where the harmfulness of an error is not obvious, the burden is going to be on the party alleging error to show prejudice. Now, McLeod also says that a reviewing court can use its judgment and look to the circumstances of a case to determine whether there's a substantial likelihood of prejudice. Certain types of error are going to be very clear. Some types of error won't be so clear. But again, Sanders and McLeod direct the court to look at the circumstances of the case. So to the extent that the harmless error standard enunciated in Stout establishes a presumption of prejudice, that particular decision has been undermined by Sanders and McLeod.  McLeod holds that a reviewing court cannot find an error harmless unless no reasonable ALJ could reach a different disability determination. This means the reviewing court must find the error harmful unless the agency presents evidence that any error is completely harmless. This also asks the court to discern what an ALJ might be thinking, which is kind of an impossible standard. And it's also contrary to Sanders and McLeod. And although the errors here involve articulation errors as opposed to notice errors, as in Sanders and McLeod, the principles enunciated in Sanders apply to all types of error. Here the appellant has not demonstrated prejudice from any of the ALJ's alleged articulation errors. And I'll start with Dr. Joris. Although the ALJ did not specifically discuss Dr. Joris's opinion in evaluating the medical evidence, this court can look to the circumstances of the case and find that there's no substantial likelihood of prejudice from any alleged error. First, this January 2006 comment that the appellant's anxiety and depression are quite disabling, if you look at all of Dr. Joris's notes, you'll see that he has essentially mild and normal examination findings. Also, I guess I don't quite understand. Are you arguing that if an ALJ fails to consider all of the medical evidence, including the evidence of a treating physician, that that is error under our law, but it's the claimant's burden to show that it was prejudicial? Normally it is the claimant's burden to show it's prejudicial. Even when there's not any discussion of a treating physician's opinion? Well, I think that both Sanders and McLeod recognize that, you know, courts have a body of jurisprudence where they recognize that certain types of errors may be more harmful than other types of errors. So let's say a failure, a complete disregard of evidence, or failure to consider, which, by the way, did not happen. It's favorable evidence of a treating medical provider. And it's not reviewed or taken into account in any way by the ALJ. My understanding, I'm not an expert in Social Security, was that under our law that was error that required at least that there be a remand for consideration. Now, are you saying that that whole framework is gone? I'm saying that any presumption of prejudice is any kind of presumption. The Sanders decision rejects any mandatory presumptions of prejudice. The court does not reject, however, the body of jurisprudence the court might develop in recognizing that certain types of errors might be more harmful than others. So let's say the disregard of evidence. The mandatory presumptions of prejudice have been rejected by Sanders and McLeod. In this case, I would just like to point out, however, that the ALJ did consider all of the evidence. This is not a case where there's complete disregard of evidence. And Judge Schroeder, that situation, the situation you bring up, the court may want to remand that case, of course. How do we know the ALJ considered Dr. Joy's opinions in full or the Wagon Blast views? How do we know that? Well, we know that because the ALJ discussed Dr. Joy's opinions in Step 2 and cited Exhibits 1F, 12F, and 2F. And so Dr. Joy's opinion is discussed there. So it's a reasonable inference that the ALJ considered that opinion. With regard to Nurse Wagon Blast, my understanding was that appellant was never contending that evidence was not discussed. The problem, according to the appellant, is that the ALJ did not provide legally sufficient reasons for rejecting that opinion. So that piece of evidence was fully discussed by the ALJ. Also, when looking at the circumstances of the case and assessing whether harm has occurred in this case, I think it's really important when looking at Dr. Joy's comment, this court look in the context of the entire record and see that the ALJ obviously gave significant weight to Dr. Lerner's opinion, which is very probative, that the plaintiff's feeling that she did not like her job and avoiding work because you don't like your job is not a reason to go to work, that was a particularly crucial piece of evidence in this case. With regard to Ms. Young, Ms. Waller, and Ms. Hammett, this court can look to the circumstances of the case and find there's no substantial likelihood of prejudice flowing from the ALJ's failure to specifically talk about every piece of evidence in this case. Ms. Young's GAAP score of 40 in November 2006. Five months later, appellant was doing much better and reported a positive response to medication. Ms. Hutchison's note that the appellant was unable to work due to stress in January 2006 also includes the comment that she was applying for work and believed a new job would reduce her stress. In the context of the entire record, this comment is fully consistent with the treating psychiatrist's opinion that the appellant would not benefit from staying off of work. In sum, the appellant has not shown that any of the alleged articulation errors here affected the outcome of this case or affected the ALJ's decision making. This court can look to the circumstances of this case and find no substantial likelihood of prejudice flowing from any of these errors and even if this court finds that stout is not undermined by the Supreme Court's decision in Sanders, the commissioner has met his burden of showing that every alleged error in this case was harmless. And unless the court has any further comments. Any other questions? Any questions? Hearing none. All right. Thank you. Okay, Mr. Janich, do you have some more about it? I'd like to start by responding to a few of the things my colleague stated about some of these issues. First of all, with regard to the need for this court to try to discern what the ALJ was thinking, that's the whole purpose of harmless error analysis from stout, is it's a way for the court to avoid having to get inside the ALJ's head. Because we can't get inside the ALJ's head. The ALJ makes their decision, they do it in writing, and that's all we've got. And we cannot tell if this ALJ had considered the evidence that she did not discuss, how would it have changed her decision? That's not the harmless error question. The question is, does the evidence matter? Because otherwise we're forced to get inside the ALJ's head and we don't want to have to do that. With regard to my counsel's argument that the ALJ discussed at Step 2, Dr. Jory's report, in Step 2 in the ALJ's decision there is a sentence that says, she's been diagnosed with depression and anxiety and has a citation to exhibit 1F. That's the entire extent of the discussion of Dr. Jory's, the evidence from him. His name is never mentioned and his findings are never mentioned and his opinion is never mentioned. The diagnosis has that citation. That's not articulation. That's nothing. The same thing is true with Ms. Hodgson. We don't need to be sitting here today and listening to the government explain to us how an ALJ might have balanced some of the statements from Ms. Hodgson's records with other statements from Ms. Hodgson's records. We've got the ALJ's decision before us here. The ALJ doesn't mention her. The ALJ doesn't discuss any of her evidence. The ALJ doesn't discuss any of the evidence from any of the mental health therapists. So, once again, this is post hoc rationales that can't be used to justify affirmance of the ALJ's decision. Now, the government's arguing that stout creates some sort of presumption of prejudice. I disagree with that characterization of stout. It's more of a presumption of neutrality. In other words, the court's not going to assume anything, really. In Sanders, the Supreme Court had a problem with rules that had been set out by the federal circuit that said, well, we've created these standards, and if this happens or this happens or this happens, then the error is harmful. And they said, no, that's too specific. You've got to look at the circumstances. I don't think that that really applies directly to this, because stout really does set forth, I think it's more of the traditional rule on harmless error, which is, does it affect the outcome of the case? And if you don't know, if you can't tell, then the error's harmful. If you can tell that it would not and could not affect the outcome of the case, it's harmless error. And I think that's a clean, it's a fairly clear and clean line to draw, and it allows the court to follow really the language in both McLeod and Sanders that if you've got doubt about it, then it's harmful. It's only if you have no doubt, if it's clear that it's not harmful, then it's harmless. So I would ask the court to, in this case, to reverse the ALJ's decision based on the fact that he did not articulate, did not discuss much significant probative evidence. And that evidence, credited as true, could reasonably be expected to, it's hard to see how a reasonable, how no reasonable ALJ could have concluded that that would not change the outcome. Thank you. I have one question. Then I take it, well I don't know if I should say I take it. Are you saying that you'd like us to reverse and to direct that the case go back to the ALJ so the ALJ would explain why he credits Dr. Lerner over Dr. Joyce, for example? Yes. I think that, honestly, in this case, I think it's more appropriate. I don't think it's crystal clear how you would, you know, there are cases where you should remand for the award of benefits, and I don't think that's really quite crystal clear here. But really the remand should include review all of the evidence, including the mental health treatment therapist evidence, and the evidence from Ms. Wagenblast, and the new evidence that was submitted to the appeals council, and consider it all and discuss it, explain it. Okay. The time is up. So we thank you and we thank Ms. Miller. I think Washington lawyers are really good at argument too. So thanks. Thank you. Kelly will be submitted. If I could go back to the Kelly case for a minute. Could you put that stand up? No. Right there. I think there's an issue in Kelly as to whether council want us to seal our disposition. Is that right? Apparently the record up to now has been sealed. You did not make a motion to seal any disposition. We just wanted to hear what your position is. You know, it's funny. I never even think about that in these cases. I always wondered. It never even occurred to me that that was something I could request, because I have had cases where people have had very embarrassing impairments, and the court's generally very respectful in addressing it. And I know in this case the most, not embarrassing, but the most confidential kind of thing I think really involves stuff involving her daughter, which she would not want to be discussed. I don't know that that would even make it into the decision. That hasn't even come up. Yes. So I'm assuming that that wouldn't come up. But with regard to the issues of not bathing, for example, I mean, it never really occurred to me that I could ask for it to be sealed, and I guess I'd like to. I gather there are certain areas of sensitivity in the record, but you haven't asked for the entire disposition or record to be sealed. I have not. I don't think my client is that overly concerned about it. I hope I'm speaking correctly. Thank you. Well, usually first it's a very difficult standard to seal something that's the final disposition. And I'm sure that probably we can write something that won't create a problem. Okay. Thank you. Okay. So Kelly shall go ahead. Do you wish to be heard? I guess I would just say that we have no position on that issue. I recognize there's sensitive material in the record. So to the extent that the appellant has any concerns about the record, you'll leave it to the court's discretion. I think if we have a question in the writing of the disposition, we can always send out a supplemental order to make it further inquiry. But I don't expect that's going to be required. Okay. We can turn to USB.
judges: Schroeder, Alarcon, Gould